JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | **2:21-cv-00428-MCS-E** | Date | January 24, 2022 |
| Title | ***Karla Schroeder v. Host International, Inc. et al*** | | |

Present: The Honorable     Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings:**   (IN CHAMBERS) ORDER REMANDING CASE TO STATE COURT (JS-6)

## I.     BACKGROUND

This is a wage and hour putative class action for California Labor Code violations Plaintiff Karla Schroeder encountered during her two days of employment with Defendant Host International, Inc. in 2019. *See* Compl., ECF No. 1-1.[1] Plaintiff originally filed this case on September 30, 2020 in Los Angeles County Superior Court and sought certification of two classes for a total of nine class claims. She also brought one claim under California's Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2698, and one individual claim. Defendant removed the case to federal court on January 15, 2021. ECF No. 1. On July 26, 2021, Plaintiff moved for class certification, ECF No. 16, and on August 30, 2021, Defendant moved for judgment on the pleadings on some of Plaintiff's individual claims, ECF No. 22.

---

[1] Plaintiff also sued Diana Flores, the HR Coordinator with control over Plaintiff's wages. *See* Compl. ¶ 96(16), ECF No. 1-1. Since Flores is an agent of Host International, Inc., for simplicity the Court refers to Defendant Host International as taking all actions here, even though multiple defendants are named.

Defendant first raised these jurisdictional concerns in response to the motion for class certification, arguing that class certification should be denied because Plaintiff lacked Article III standing for many of her claims. Def. Class Certification Opp'n 9–10, ECF No. 18. Plaintiff did not address whether she had standing in her reply brief. Pl. Class Certification Reply, ECF No. 26.

The Court's review of the briefing for both motions confirmed that Defendant's concerns about standing were warranted and uncovered additional jurisdictional concerns under both Article III and the Class Action Fairness Act of 2005 ("CAFA"). The Court was concerned that the Complaint contained virtually no factual details regarding Plaintiff's case, that Plaintiff's conclusory allegations of injury were in many instances proven demonstrably false by undisputed evidence, and that many of her claims were related to work done after she resigned from her job. The Court raised its concerns with the parties sua sponte in a December 13, 2021 order. ECF No. 31. The Court asked the parties to submit briefing and evidence on the jurisdictional issues addressing six questions:

1. What is Plaintiff's Article III injury for each claim?
2. What is the effect of *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668 (9th Cir. 2021), on whether Plaintiff can establish a cognizable Article III injury?
3. What facts establish Plaintiff's Article III injury for each claim?
4. What is the amount-in-controversy for each separate claim?
5. If the Court dismisses some of the Plaintiff's claims, does Defendant still meet the $5,000,000 amount-in-controversy requirement for removal under the Class Action Fairness Act?
6. Is Defendant's calculation of the amount in controversy reasonable?

The parties filed supplemental briefs on December 23, 2021. Def. Suppl. Br., ECF No. 32; Pl. Suppl. Br., ECF No. 33. The Court has reviewed those briefs, the Complaint, and the evidence and arguments presented in the parties' pending motions and concludes that it lacks jurisdiction. The record before the Court shows that Plaintiff personally experienced very little of the conduct about which she complains. Even then, only some of the conduct she personally experienced caused a cognizable Article III injury. In addition, CAFA's amount-in-controversy requirement is not satisfied because Defendant's calculations of the value of the claims Plaintiff has standing to pursue are unreasonable. The Court therefore lacks subject-matter jurisdiction over the entire case and must remand it to state court.

## II.    LEGAL STANDARD

A defendant may remove an action from state court to federal court if the plaintiff could have originally filed the action in federal court. *See* 28 U.S.C. § 1441(a). CAFA provides federal subject matter jurisdiction if (1) the proposed plaintiff class is not less than 100 members, (2) the parties are minimally diverse, and (3) the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (5)(B). "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing S. Rep. No. 109-14, at 42 (Fed. 28, 2005)).

Although "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), the removing party bears the burden of establishing federal jurisdiction. *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) ("The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal."). Consequently, as the defendant seeking to establish federal jurisdiction, Defendant must demonstrate that Plaintiff has alleged a concrete injury-in-fact. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019) ("The party invoking federal jurisdiction bears the burden on establishing the elements of Article III jurisdiction." (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992))).

Where the amount in controversy is not apparent from the face of the complaint, the removing party "must prove by a preponderance of the evidence that the amount in controversy requirement [under CAFA] has been met." *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). While generally "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," where a plaintiff or the court contests the amount in controversy put forth by the defendant, "[e]vidence establishing the amount is required . . . ." *Dart Cherokee Basin*, 574 U.S. at 89. The parties, thus, "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

A subject-matter jurisdiction challenge may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. "For a facial attack, the court, accepting the allegations as true and drawing all reasonable inferences in the defendant's favor, determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (internal quotation marks omitted). In a "factual attack" to federal jurisdiction, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint . . . ." *Id.* at 1039.

## III. DISCUSSION

This case lies at the intersection of two different jurisdictional requirements—Article III standing and CAFA's $5 million amount-in-controversy requirement. By statute, Congress has only extended federal court jurisdiction to class actions which have at least $5 million in controversy at the time the case is filed in or removed to federal court. 28 U.S.C. § 1332(d). In addition, under Article III of the United States Constitution, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Taken together, Defendant is required to establish that CAFA's $5 million threshold is satisfied by claims Plaintiff has standing to pursue.

Defendant previously argued that Plaintiff lacked standing for certain claims but now seeks to distance itself from those arguments. Defendant first explains that its intent in raising issues concerning Plaintiff's standing was actually to show that her claims cannot be certified and should be dismissed because they lack merit. Def. Suppl. Br. 1 n.2. Defendant later explains that its prior arguments presupposed that the Court would factually conclude that Plaintiff did not suffer a Labor Code violation as part of ruling on Plaintiff's motion for class certification. *Id.* at 8 n.7. Defendant also argues the amount-in-controversy requirement is easily satisfied based on its valuations of Plaintiff's claims. *Id.* at 8–17.

For her part, Plaintiff now argues she lacks standing to pursue her wage statement and PAGA claims in federal court and that Defendant has failed to satisfy

CAFA's amount-in-controversy because its calculations rely on unreasonable assumptions and lack any evidentiary basis. Pl. Suppl. Br. 3–9.

## A.    Article III Standing

The Court asked the parties to provide supplemental briefing on three questions related to Article III standing:

1. What is Plaintiff's Article III injury for each claim?
2. What is the effect of *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668 (9th Cir. 2021), on whether Plaintiff can establish a cognizable Article III injury?
3. What facts establish Plaintiff's Article III injury for each claim?

The Court asked the parties to address the effect of the Ninth Circuit's recent decision in *Magadia* because of its relevance to multiple aspects of the standing analysis. In *Magadia*, the Ninth Circuit held that a plaintiff who lacked standing for her own meal break claim because she was never legally injured also lacked standing to bring a PAGA claim for missed meals breaks. 999 F.3d at 678. The Court next found standing for alleged deficiencies in the plaintiff's wage statements because the alleged missing rate-of-pay information was sufficiently connected to a real risk of concrete harm. *Id.* at 680. However, the court concluded that the plaintiff's wage statement class claim and PAGA claim both failed on the merits. *Id.* at 682. The Ninth Circuit therefore reversed judgment on the class and PAGA claims. *Id.*

Defendant argues that *Magadia* only applies to PAGA claims and not individual or class claims, or that it only applies after a trial and a verdict determining the plaintiff suffered no injury. Def. Suppl. Br. 6. The Court declines Defendant's invitation to cabin *Magadia* to its particular procedural history. Defendant's narrow interpretation of *Magadia* ignores its application of Article III injury principles to Labor Code claims within and outside the PAGA context. *See Magadia*, 999 F.3d at 678–80.

The Court asked the parties to identify Plaintiff's Article III injury for each claim and identify facts establishing that injury. Plaintiff admits that she probably lacks standing on her wage statement and PAGA claims. Pl. Suppl. Br. 6, 9. For the remaining claims, she states without elaboration that either "[i]t seems difficult to articulate a basis for Article III standing" or "the claim is one for actual injury, although the amounts at issue are quite small and do not meet the threshold for CAFA jurisdiction." *Id*. at 4–6. Defendant identifies allegations relevant to injury for the

class claims from the Complaint, Def. Suppl. Br. 2–5, but the allegations are facially insufficient to state an Article III injury because virtually all the cited allegations are bare legal conclusions that quote the relevant statute. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (noting that while *Iqbal* and *Twombly* do not apply to facial jurisdictional challenges, parties still cannot rely on bare legal assertions of injury-in-fact); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en banc) (holding that an Americans with Disabilities Act complaint alleging that plaintiff "encountered architectural barriers that denied him full and equal access" was facially insufficient to allege injury-in-fact because it failed to identify the barriers or how their effect on him caused a cognizable Article III injury). Nothing in the Complaint or the parties' supplemental briefing identifies any specific factual allegations sufficient to establish standing. *See generally* Compl.

Defendant identifies seven categories of evidence of injury. Def. Suppl. Br. 6–7. For the claim for unpaid wages and expenses related to fingerprinting, Defendant cites deposition testimony wherein Plaintiff claims she did not receive any compensation for time spent fingerprinting. *Id.* at 6. This is sufficient to establish a cognizable Article III injury. For the claim for denied rest breaks, Defendant again cites relevant deposition testimony from Plaintiff about her lack of rest breaks during her training. *Id.* at 7. This is sufficient to establish a cognizable injury.

Defendant fails to establish standing for any other claim. For the claims related to untimely and unpaid wages and a late final paycheck, Defendant only cites Plaintiff's notice of her motion for class certification, presumably hoping the Court would review the documents cited in the notice. *Id.* at 7. The Court declines to pore through various briefs, declarations, and depositions Plaintiff cites in her notice to guess what evidence Defendant might believe is sufficient to satisfy its jurisdictional burden. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))). This general reference contrasts sharply with Defendant's persuasive arguments from a prior brief that Plaintiff lacked standing for each of these claims. Def. Class Cert. Opp'n 9.

For the claim related to the deficient wage statement, Defendant states that "Plaintiff claimed that the unique wage statement she received did not comply with Labor Code Section 226" and cites Plaintiff's deposition testimony. Def. Suppl. Br. at 7 (citing Schroeder Dep. 80:13–15, 83:11–13, Madoyan Decl. Ex. 3, ECF No. 32-1). A vague and conclusory assertion of noncompliance with a procedural statute does not establish an injury-in-fact. *See TransUnion*, 141 S. Ct. at 2211. In any event,

the cited testimony does not support Defendant's argument. Plaintiff testified that her check stub did not have her employee number and that her physical final paycheck only had her name on it and did not contain certain information. Schroeder Dep. 80:13–15, 83:11–15. Defendant ignores *Magadia*'s analysis of when deficiencies in wage statements can cause an Article III injury. Per *Magadia*, wage statements and paychecks can be entirely separate documents under Labor Code section 226. 999 F.3d at 682. Defendant's "evidentiary proof" does not even address whether Plaintiff received a wage statement ("unique" or otherwise), what information was omitted, or how that omission could have caused Plaintiff a concrete injury. Def. Suppl. Br. 6–7. Thus, Defendant has not established an injury supporting the wage statement claim.

For the claims related to unpaid minimum wages, unpaid overtime wages, withheld meal breaks, unreimbursed supply expenses, and late employment records, Defendant cites no evidence of injury. Def. Suppl. Br. 6–7. Thus, Defendant does not establish Plaintiff's standing for these claims.

In summary, the record before the Court shows that the only claims Plaintiff has standing to pursue are for unpaid wages and expenses from being fingerprinted and for being deprived of rest breaks during orientation. While the scope of the Complaint as pleaded is far more expansive, it is unsurprising that neither party provided any evidence of standing for the remaining panoply of claims. Plaintiff resigned from her employment with Defendant after two days without completing her orientation and simply never experienced most of the legal violations alleged in her Complaint.

## B.    CAFA's Amount-in-Controversy

The Court asked the parties to address three questions related to CAFA's amount-in-controversy requirement:

4. What is the amount-in-controversy for each separate claim?
5. If the Court dismisses some of the Plaintiff's claims, does Defendant still meet the $5,000,000 amount-in-controversy requirement for removal under the Class Action Fairness Act?
6. Is Defendant's calculation of the amount in controversy reasonable?

In response to the Court's fifth question, Defendant argues that even if the Court dismisses some of Plaintiff's claims for lack of standing, CAFA jurisdiction is

unaffected because "post-filing developments do not defeat jurisdiction if jurisdiction was properly invoked at the time of filing." Def.'s Suppl. Br. 15 (quoting *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 686 (9th Cir. 2013) (quoting *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1091–92. (9th Cir. 2010))). Defendant's argument is circular—it assumes that it satisfied CAFA's amount-in-controversy requirement at the time of removal. The Court asked for supplemental briefing to resolve that exact issue.

The Ninth Circuit has expressly rejected Defendant's argument when applied to subject-matter jurisdiction defects and explained that "[i]n context, the quoted statement in *United Steel* applies only to 'post-filing developments,' such as a failure of Rule 23 class certification that might defeat CAFA eligibility." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197 (9th Cir. 2016). "[W]hen federal jurisdiction is absent from the commencement of a case, a putative class action is not 'properly removed'—and therefore need not 'stay removed.' This case lacked a named plaintiff with Article III standing, and therefore was not properly removed." *Id.* (citations and alterations omitted). *United Steel* also recognized exceptions to the general rule of "once jurisdiction, always jurisdiction," such as mootness or, as relevant here, "when there was no jurisdiction to begin with because the jurisdictional allegations were frivolous from the start." *United Steel*, 602 F.3d at 1092 n.3 (9th Cir. 2010) (citing *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010)). By definition, whether the amount-in-controversy requirement was satisfied at the time of removal cannot be a post-filing development. The Supreme Court has noted that the long-held rule is that subject-matter jurisdiction "depends on the state of things at the time of the action brought." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007) (quoting *Mullan v. Torrance*, 9 Wheat. 537, 539 (1824)). The Court explained that "[t]he state of things and the originally alleged state of things are not synonymous; demonstration that the original allegations were false will defeat jurisdiction." *Id.* That axiom aptly fits this case. The Court therefore concludes that CAFA's amount-in-controversy requirement can only be satisfied by claims that also comply with the requirements of Article III.

The Court concluded above that Plaintiff only had standing to bring claims for her uncompensated time and expenses associated with providing her fingerprints and for the rest breaks she was allegedly denied during orientation. Defendant calculated the unpaid wages for fingerprinting and training claim as having a value of $7,039,699; the rest break claim as having a value of $5,439,000; and attorney's

fees as likely ranging from $500,000 to $1,000,000. *See* Def. Suppl. Br. 8–9, 12, 14–15. These calculations are unreasonable. The potential recovery for these claims is likely exceedingly small given that Plaintiff's fingerprinting took her around thirty minutes and cost a few dollars, Schroeder Decl. ¶ 6, ECF No. 16-2, and that she was denied a rest break on the days she attended orientation prior to her resignation, Schroeder Dep. at 80:13–15, 83:11–13. Defendant provides no evidence that would let the Court conclude the number of its employees and value of their claims derived from the half-hour of fingerprinting or the rest breaks during orientation can reach these astronomical amounts. *See generally* Def. Suppl. Br. Defendant also provides no basis to calculate attorney's fees in this action. *Id.* Defendant has not satisfied its burden to prove the claims meet the CAFA amount in controversy. *See Abrego*, 443 F.3d at 683. The Court thus concludes it has no jurisdiction.

## IV.    CONCLUSION

The Court **REMANDS** the action to the Los Angeles County Superior Court, No. 20STCV37525. The Court denies as moot the joint stipulation to modify dates, ECF No. 34, the motion for judgment on the pleadings, ECF No. 22, the motion to exclude Plaintiff's expert witness, ECF No. 20, and motion for class certification, ECF No. 16. The Court directs the Clerk to effect the remand and close the case.

**IT IS SO ORDERED.**